# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION
#### CRIMINAL ACTION NO. 3:14-CR-00102-TBR

UNITED STATES OF AMERICA,                                             Plaintiff,

v.

EDISON ARTICA ALFARO, *et al.*,                                        Defendants.

## MEMORANDUM OPINION AND ORDER

The Government indicted Edison A. Alfaro and Marco A. Chaires for conspiring and attempting to possess at least five kilograms of cocaine with intent to distribute the same. Relying on Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522, Alfaro and Chaires seek to suppress various recordings of telephone conversations between them and two confidential informants. Because the confidential informants voluntarily consented to the recordings, though, Alfaro and Chaires' Motion to Suppress, R. 112, is **DENIED**.

### I.

### A.

In July 2014, the United States Drug Enforcement Administration, in cooperation with the Louisville Metro Police Department, utilized two confidential informants to pose as cocaine suppliers as part of an investigation into a criminal drug trafficking organization. R. 1 at 2, ¶ 3 (Criminal Complaint). LMPD officers directed the two confidential informants to areas in Louisville, Kentucky associated with bulk narcotics trafficking. *Id.* While visiting one such location, the confidential informants met Marco A. Chaires. *Id.* The confidential informants established themselves as persons connected to a Mexican drug cartel capable of providing multiple kilograms of cocaine. *Id.*, ¶ 4.

1

"Based on this information," Chaires explained that his associate, Edison A. Alfaro, was actively involved "in the distribution of cocaine . . . and would be interested in such an opportunity." *Id.* Chaires introduced the confidential informants to Alfaro that same day, and Alfaro "confirmed his interest in purchasing cocaine" from them. *Id.* Chaires provided his telephone number to the confidential informants and said "that they could contact that telephone number in regards to setting up a future cocaine transaction." *Id.*

Between July and September, the confidential informants exchanged multiple telephone calls with Chaires, *id.* at 2–3, ¶¶ 5–9, which law-enforcement officers recorded through third-party software installed on the confidential informants' cellphones. Those conversations lead to a transaction in which Alfaro and Chaires agreed to purchase seven kilograms of cocaine from the confidential informants for $238,000. *Id.* at 4, ¶ 10. On September 23, Alfaro and Chaires met the confidential informants in a Kroger the parking lot to consummate the deal. *Id.*, ¶ 12. One of the confidential informants entered Alfaro and Chaires' vehicle, where he was handed "a large black bag" containing $238,000. *Id.* Law-enforcement officers then arrested Alfaro and Chaires. *Id.*

### B.

On October 7, 2014, Edison A. Alfaro and Marco A. Chaires were indicted for conspiring and attempting to possess at least five kilograms of cocaine with intent to distribute the same. R. 16 at 1–2 (Indictment). Since that time, Alfaro and Chaires have engaged in substantial motion practice related to discovery and other issues. *See United States v. Alfaro*, No. 3:14-CR-00102-TBR, 2015 WL 173797 (W.D. Ky. Jan. 13, 2015); *United States v. Alfaro*, No. 3:14-CR-00102-TBR, 2015 WL 1042115 (W.D. Ky. Mar. 10, 2015); *United States v. Alfaro*, No. 3:14-CR-00102-TBR, 2016 WL 632619 (W.D.

Ky. Feb. 17, 2016).   In this latest chapter, Alfaro and Chaires move to suppress the conversations recorded between them and the two confidential informants.[1]  *See* R. 112 at 1–3 (Motion to Suppress).  The Court held a suppression hearing on May 17, 2016.  *See* R. 123 at 1 (Order of April 19, 2016); R. 127 at 1 (Order of May 23, 2016).

### III.

Alfaro and Chaires ask the Court to suppress various audio recordings of conversations between them and two confidential informants.  *See* R. 112 at 1–3.  The gist of Alfaro and Chaires' argument is that the Government violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522, when it recorded those communications without either parties' consent.  *See* R. 112-1 at 23–31 (Memorandum in Support); R. 121 at 1–3 (Reply).  The Government takes issue with that factual premise, *see* R. 120 at 4–5 (Response), and for good reason.

Generally speaking, Title III makes it unlawful "to 'intentionally intercept[] . . . any wire, oral, or electronic communication," *Huff v. Spaw*, 794 F.3d 543, 548 (6th Cir. 2015) (quoting 18 U.S.C. § 2511(1)(a)), and bars the use of any such communication "in any trial or other proceeding," *United States v. Shelton*, 30 F.3d 702, 707 (6th Cir. 1994) (citing 18 U.S.C. § 2515).   To enforce that statutory prohibition, Title III allows "an aggrieved person [to] file a motion to suppress the contents of [an] intercepted communication" where "the interception was unlawful."[2]  *Id.* (citing 18 U.S.C. § 2518(10)(a)).   An interception is not unlawful so long as "'one of the parties to the

---

[1] Though originally filed by Edison A. Alfaro alone, the Court granted Marco A. Chaires' oral request to join that motion.  *See* R. 115 at 1, ¶ 2 (Scheduling Order).

[2] It is unclear whether Alfaro has standing to bring this motion (or to join in it), as it does not appear that the Government recorded any telephone conversations between *him* and the confidential informants.  Because Chaires undeniably has standing, though, the Court need not resolve that question.

3

communication' gives prior consent," *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005) (quoting 18 U.S.C. § 2511(2)(c)), and the interception is made by "a person acting under color of law," 18 U.S.C. § 2511(2)(c).[3]

In this case, the Court finds that the confidential informants impliedly consented to the Government's interception of their telephone conversations with Chaires. During the suppression hearing, U.S. Drug Enforcement Administration Special Agent Jason Moore explained how the Government captured those conversations. According to Special Agent Moore, the confidential informants were provided with certain third-party software used to facilitate the recording of both incoming and outgoing telephone calls. The third-party software mimicked, or "spoofed," a telephone number generated beforehand by law-enforcement officers. Whenever a person (such as Chaires) dialed that number, the resulting call was recorded automatically. With respect to outgoing calls, the software required the confidential informants to input a personal identification number. Once unlocked, outgoing calls would appear as if originating from the mimicked number. Those telephone calls would be recorded automatically too.

Special Agent Moore explained to the confidential sources how the software functioned, including that the Government would record any incoming and outgoing calls. Evidently, the confidential informants used the technology with measureable success. Such conduct, along with the confidential informants' extensive involvement in the investigation generally, demonstrates their implied consent to interception. *See United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003) (finding implied

---

[3] There is no dispute that the confidential informants acted under the color of law. "[I]nformants who record private conversations at the direction of government investigators are 'acting under the color of law.'" *Obron Alt. Corp. v. Barr*, 990 F.2d 861, 864 (6th Cir. 1993) (quoting *United States v. Haimowitz*, 725 F.2d 1561, 1582 (11th Cir. 1984)).

consent to interception from informant's cooperation and participation in investigation); *United States v. Williams*, 106 F.3d 1173, 1177–78 (4th Cir. 1997) (finding implied consent to search envelops addressed to informant based on informant's conduct and cooperation with investigation).

Though Alfaro and Chaires object that the confidential informants' consent was involuntary, *see* R. 112-1 at 23–31; R. 121 at 1–3, the Court finds that objection meritless.

> An informer's consent to the monitoring or recording of a telephone conversation is an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant consequences to him. Hence, it will normally suffice for the Government to show that the informer went ahead with a call after knowing what the law enforcement officers were about.

*United States v. Bonanno*, 487 F.2d 654, 658–59 (2d Cir. 1973) (Friendly, J.). Special Agent Moore testified, credibly, that the confidential informants knowingly and voluntarily consented to assisting the Government with its investigation. *See United States v. Traficant*, 558 F. Supp. 996, 1000 (N.D. Ohio 1983) (finding informant voluntarily consented based on testimony from federal agent); *accord United States v. Edmond*, 718 F. Supp. 988, 992–93 (D.D.C. 1989) (same); *United States v. Bradford*, 496 F. Supp. 366, 367–68 (D. Conn. 1980) (same). There is nothing to indicate that law-enforcement officers threatened or coerced the confidential informants or otherwise pressured them to participate on an involuntary basis. *See United States v. Daniel*, 802 F.2d 460, 1986 WL 17548, at \*5 (6th Cir. 1986) (unpublished table decision). The confidential informants had no outstanding criminal charges, and the Government made no promises of leniency or assistance for past offenses, if any exist. While the confidential informants were paid in exchange for helping the investigation along,

5

incentives of such a sort do not vitiate otherwise voluntarily consent. *See United States v. Franks*, 511 F.2d 25, 31 (6th Cir. 1975) (finding informant voluntarily consented despite being furnished with an apartment, an allowance, and a new car); *accord United States v. Horton*, 601 F.2d 319, 322 (7th Cir. 1979) ("The case law thus is quite clear that an informant's consent cannot be rendered involuntary merely because the Government has extended benefits to the informant in exchange for his cooperation."); *cf. United States v. Scaife*, 749 F.2d 338, 345 (6th Cir. 1984) ("[C]onsent to have conversations recorded is not vitiated by governmental promises of leniency."); *United States v. Porter*, 29 F. App'x 232, 238 (6th Cir. 2002) (same).  In sum, the confidential informants' voluntary consent is sufficient to shield the recordings from attack under Title III. *See* 18 U.S.C. § 2511(2)(c).

## IV.

**IT IS HEREBY ORDERED** that Edison A. Alfaro and Marco A. Chaires' Motion to Suppress, R. 112, is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc:      Counsel of Record